400 So.2d 650 (1981)
STATE of Louisiana
v.
Eddie Lee BIAS.
No. 81-K-0287.
Supreme Court of Louisiana.
June 22, 1981.
*651 William E. Armstrong, Monroe, for defendant-realtor.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., Vicki Green, Asst. Dist. Atty., for plaintiff-respondent.
LEMMON, Justice.[*]
This case presents the issue of whether evidence that a defendant defaulted on a contractual obligation involving the lease of movables by failing either to make the rental payments or to return the movable is alone sufficient to establish beyond a reasonable doubt that defendant committed the crime of unauthorized use of a movable. R.S. 14:68.

I.
Defendant rented a television set from Peter's Furniture Store at a weekly rate of $20, payable in advance. The contract, although purporting to be a rental agreement, clearly provides that the furniture company will transfer ownership of the television after 104 weekly payments.[1]
After making about six weekly payments, defendant defaulted. Concerned that payments had stopped and the set had not been returned, an employee of the furniture company investigated and discovered that defendant had changed his residence, taking the set with him. Since the furniture company had not consented, removal of the set from the residence address listed in the contract constituted a breach of the agreement.
Defendant was contacted at his place of employment, and he promised to become current in his payments. However, he failed to live up to this promise or to return the set, as required by the contract.[2] The *652 company then complained to the police, who arrested defendant for unauthorized use of a movable. The district attorney filed a bill of information, and this conviction resulted.

II.
A person commits the crime of unauthorized use of a movable when he either takes or uses another's property without the owner's consent or by means of fraudulent practices. R.S. 14:68, although not requiring that a person act with an intent to deprive the owner permanently of his property, must reasonably be construed to require the existence of fraudulent intent. See State v. Kelley, 241 La. 224, 128 So.2d 18 (1961). If the statute were construed otherwise, every breach of a rental contract would be included within the reach of the statute, and the Legislature certainly did not intend such a result.
Even if it were arguable that the Legislature intended such a result, we must construe the statute following the principle of lenity and give to defendant the benefit of any legitimate doubts regarding the scope of the statute's proscriptions. See State v. Brown, 378 So.2d 916 (La.1980); State v. Bosworth, 373 So.2d 152 (La.1979).
R.S. 14:68 may be violated by a taking or use either without the consent of the owner or by means of fraudulent conduct, practices, or representations. Here, the state's theory must be either (1) that the "use" of the movable was without the owner's consent, when defendant discontinued paying rent, or (2) that the "use" was by means of fraudulent practices, when defendant kept the set without making the agreed payments. We decline to accept a theory that the mere failure to make rental payments as agreed constitutes a "use without consent" or a "use by fraudulent practices" for purposes of the statute.
We conclude that the conscientious trial judge erred in construing the statute too broadly.[3] Under the more narrow construction that we adopt, the state failed to produce evidence which, even when viewed in a light most favorable to the state, reasonably proved that defendant acted with a fraudulent intent when he failed to continue payments, to return the set, or to notify the furniture company that he moved the set to a new residence. Affirmation of the conviction on the evidence in this record would require a holding that proof of breach of a rental agreement is alone sufficient to prove a "use without consent" or a "use by fraudulent practices, conduct, or representations". As stated before, we do not believe such a result was intended when the statute was enacted.[4]
Perhaps the Legislature could enact a special criminal statute proscribing the failure to abide by the terms of a rental agreement.[5] Nevertheless, we construe the *653 present statute proscribing unauthorized use of a movable as requiring a showing of mens rea or criminal intent, since the "evil" state of mind of the actor normally distinguishes criminal acts (punishable by the state alone) from mere civil wrongs (actionable by private individuals against one another). C.Cr.P. art. 381. In State v. Brown, 389 So.2d 48 (La.1980), a case in which we construed a statute prohibiting possession of certain controlled substances to require proof of criminal intent, we stated:
"[w]e observe the familiar proposition that `[t]he existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence.' Dennis v. United States, 341 U.S. 494, 500, 71 S.Ct. 857, 862, 95 L.Ed. 1137 (1951). In a much cited passage from Morissette v. United States, 342 U.S. 246, 250-251, 72 S.Ct. 240, 243, 244, 96 L.Ed. 288 (1952), the United States Supreme Court observed:
'The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil. A relation between some mental element and punishment for a harmful act is almost as instinctive as the child's familiar exculpatory "But I didn't mean to," and has afforded the rational basis for a tardy and unfinished substitution of deterrence and reformation in place of retaliation and vengeance as the motivation for public prosecution. Unqualified acceptance of this doctrine by English common law in the Eighteenth Century was indicated by Blackstone's sweeping statement that to constitute any crime there must first be a "vicious will".'
"The `vicious will' has been replaced with less colorful descriptions of the mental state required for a criminal act; nevertheless, intent generally remains an indispensable element of a criminal offense." 389 So.2d at 50.
Finally, we note that the state may produce direct or circumstantial evidence of "fraudulent intent" in unauthorized use cases involving the initial acquisition of property by rental agreement. The evidence in this case, however, simply does not reasonably support the inference of fraudulent intent beyond a reasonable doubt.
Accordingly, the conviction and sentence are reversed, and the matter is remanded with instructions to grant defendant's motion for a judgment of acquittal.
REDMANN, J. pro tem., dissents with reasons.
DENNIS, J., concurs with reasons.
REDMANN, Justice Pro Tem., dissenting.
This Court is unconstitutionally constituted and an accused is denied due process of law by his or her case's being referred to it instead of the Louisiana Supreme Court as constituted by La.Const. Art. 5, §§ 1, 3 and 4, to which this Court should order this case referred.
See the writer's dissent, State v. Petterway, La.1981, 403 So.2d 1157, 1161.
NOTES
[*] Judges William V. Redmann and Thomas J. Kliebert of the Fourth Circuit Court of Appeal and Judge Cecil C. Cutrer of the Third Circuit Court of Appeal participated in this decision as associate justices ad hoc, joined by Associate Justices Calogero, Dennis, Blanche and Lemmon.
[1] Defendant argues that we should construe the contract as a sale and not as a lease, thereby transferring ownership to defendant. See Barber Asphalt v. St. Louis Cypress, 121 La. 152, 46 So. 193 (1908); Pastorek v. Lanier Systems Co., 249 So.2d 224 (La.App. 4th Cir. 1971). Obviously, were we to hold that the contract was a sale, defendant could not be guilty of unauthorized use of a movable "which belongs to another". Because we reverse the conviction on insufficient evidence, we need not address this contention.
[2] The record is unclear as to what happened to the television set. Defendant testified that he called the furniture company and told an employee, Tamara Patterson, to have the set picked up from his room in the Barron Hotel. A clerk at the Barron Hotel testified that she permitted the set to be picked up by two men from defendant's hotel room, believing they were employees of the furniture company. The owner of the furniture company denied that any employees of his company picked up the set, but verified that Tamara Patterson had left her employment with the company. The set was never recovered.

The record, though unclear, does not support a finding beyond a reasonable doubt that defendant was involved in the removal of the set from his room at a time shortly after his default in payment.
[3] In his reasons for judgment the trial judge said:

"It's true that authorization was given to Mr. Bias when the contract was initially executed to take the TV set or have the TV set placed in his home. When he discontinued paying for that, and continued to keep the set without reporting and satisfying Mrs. Sanders about where the TV set was, at that time he began to use this TV set in an unauthorized fashion. The evidence is quite clear here that that's what occurred, and the Court finds the defendant guilty as charged."
[4] For a very scholarly discussion of the history of the statute, see Chief Justice Dixon's opinion in State v. Gisclair, 382 So.2d 914 (La.1980).
[5] The Legislature has enacted various special criminal statutes to protect the interest of certain types of creditors, as, for example, the statute protecting mortgage holders from fraudulent disposition of movable property. The unauthorized use statute, however, cannot by its terms be applied to prosecute every lessee of a movable who defaults. See R.S. 9:5359 (removal of mortgaged property) and R.S. 32:710(L) (removal of mortgaged automobiles). See also R.S. 14:68.1 (unauthorized removal of shopping carts).