ROLAND L. BELSOME, Judge.
 

 |! Defendant-Appellant appeals his conviction and sentence for unauthorized use of a motor vehicle. For the reasons that follow, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 Defendant Alphonse Gilmore was charged on November 28, 2007 with one count of unauthorized use of a motor vehicle, a charge to which he pled not guilty at his arraignment on December 10, 2007. The court heard and denied a motion to suppress the evidence on January 9, 2008.
 

 At trial, Anthony Augello (“Augello”) testified that he owned a gold Chevy Malibu. On September 25, 2007, he parked the Malibu in a self-service parking lot across the street from University Hospital at approximately 11:00 a.m. Auguello stated that he could not remember if he locked the car, but that he took his keys with him when he left the car, and a valet key was left in the center console of the car. When Aguello returned to the parking lot at approximately 5:00 p.m. after receiving medical treatment, the car was gone, and
 
 *576
 
 he reported the theft of his car to the police.
 

 la-Arguello further testified that when he retrieved the car a few days later, the car had no broken windows or other evidence that the car had been broken into; that his old driver’s license, which he had stuck in some plastic that was over the driver’s side door, was still in the place where he had left it; and his registration to the car was still in the glove compartment. Notably, Aguello stated that he did not know Defendant and had not given him permission to use his car.
 

 Detective Todd Durel (“Det. Durel”) testified that on September 27, 2007, he was conducting a surveillance of 3403 Paris Avenue, and shortly after 1:30 p.m. he saw two men, Defendant Alphonse Gilmore and Sterling Harris, exit the residence and walk to a gold 2005 Chevy Malibu. Det. Durel stated that he observed Gilmore use a key, which was by itself on a key ring, to enter the car, and that Gilmore entered the driver’s side of the car, while Harris entered the passenger side. Det. Durel noted that the men left in the car, returned almost an hour later, and again left in the car approximately half an hour after that, at which time Defendant used the key to enter the car and drive away.
 
 [1]
 
 After running the license plate number on the car and learning that it had been reported stolen two days earlier, Det. Durel testified that because he was conducting the surveillance, he radioed other officers who met with him and ultimately arrested Defendant at the scene. Det. Durel did not prepare the police report, nor did he speak with the vehicle’s owner.
 

 Similarly, Officer Michael Stalbert (“Off. Stalbert”) testified that he met with Det. Durel and verified that the car was stolen; he arrested Defendant as he was standing next to the car, searched him, and found the key to the car in Defendant’s pants pocket, which opened and started the car. Off. Stalbert stated |3that his partner, Officer Robert Guesnon (“Off. Guesnon”), subsequently notified the vehicle’s owner. Off. Stalbert did not write the police report for the incident, and, when questioned, could not explain why one part of the report indicated that the car was stolen at 10:00 a.m. while another part of the report indicated that it was stolen around 3:00 p.m. Off. Stalbert further testified that he never saw defendant driving the car and did not call for crime lab personnel to examine the car because Det. Durel had observed defendant driving the car.
 

 The testimony of Off. Guesnon corroborated that of his partner, Off. Stalbert. In addition, he testified that he contacted the owner of the car on his cell phone, and when the owner indicated he could not retrieve the car at that time, he had the car towed, and he provided the key to the towing company. Off. Guesnon stated that when he saw the car, it did not have any broken windows or door locks, and the steering wheel was intact. He stated that he did not ask the owner if defendant had permission to use the car because the car had been reported stolen.
 

 Defendant also testified, and denied knowing that the car was stolen or even using the car, and admitted that he did not have a driver’s license. He testified that on the day of his arrest, he was visiting his friends Ronald and Akeem Crawford at their house at 3403 Paris Avenue, and that he was in the bathroom when police officers kicked in the door to the house. He testified that the officers burst into the bathroom and took him to the front of the house where the other people in the house were being held. Defendant insisted that
 
 *577
 
 the officers did not find the key to the car in his pocket, but in a sofa inside the house.
 

 On May 5, 2008, a six-person jury found Defendant guilty as charged. After ordering a presentence investigation, the court sentenced defendant to serve two |4years at hard labor. Counsel orally moved for reconsideration of sentence, and the court denied the motion. This appeal followed.
 

 DISCUSSION
 

 Errors Patent
 

 A review of the record reveals no patent errors.
 

 Assignment of Error
 

 By his sole assignment of error, the appellant contends that the State failed to present sufficient evidence to support his conviction. Specifically, he argues that there was no evidence that he knew the car was stolen and thus knew that he did not have permission to use the car.
 

 The Louisiana Supreme Court set forth the standard for evaluating a claim of insufficient evidence in
 
 State v. Brown,
 
 2003-0897, p. 22 (La.4/12/05), 907 So.2d 1, 18:
 

 When reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated in
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, the appellate court “must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.”
 
 State v. Neal,
 
 00-0674, (La.6/29/01) 796 So.2d 649, 657 (citing
 
 State v. Captville,
 
 448 So.2d 676, 678 (La.1984)).
 

 When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 requires that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.”
 
 Neal,
 
 796 So.2d at 657. Ultimately, all evidence, both direct and circumstantial must be sufficient under Jackson to prove guilt beyond a reasonable doubt to a rational jury.
 
 Id.
 
 (citing
 
 State v. Rosiere,
 
 488 So.2d 965, 968 (La.1986)).
 

 |5See also
 
 State v. Batiste,
 
 2006-0875 (La.App. 4 Cir. 12/20/06), 947 So.2d 810;
 
 State v. Sykes,
 
 2004-1199 (La.App. 4 Cir. 3/9/05), 900 So.2d 156.
 

 In this case, defendant was convicted of unauthorized use of a motor vehicle, which is defined by La. R.S. 14:68.4 as “the intentional taking or use of a motor vehicle which belongs to another, either without the other’s consent,
 
 or
 
 by means of fraudulent conduct, practices, or representations, but without any intention to deprive the other of the motor vehicle permanently.” La. R.S. 14:68.4 (emphasis added). Defendant argues that the State failed to show that he took the car or that he had “fraudulent intent” in his use of the car, citing
 
 State v. Bias,
 
 400 So.2d 650, 652 (La.1981). The Court in
 
 Bias
 
 noted that although La. R.S. 14:68 (the unauthorized use of a movable) did not require that a person act with an intent to deprive the owner permanently of his property, it “must reasonably be construed to require the existence of fraudulent intent.”
 
 Bias,
 
 400 So.2d at 652.
 

 In
 
 State v. Coleman,
 
 2002-1487 (La.App. 4 Cir. 10/9/02), 830 So.2d 341, this Court found that the elements of La. R.S. 14:68.4 are established if the State proves that a defendant knowingly used a motor vehicle without the owner’s consent. In
 
 Coleman,
 
 the defendant was hired as a driver for the Salvation Army.
 
 Coleman,
 
 830 So.2d at 342. His duties were to drive the company’s van and transport workers; he had a
 
 *578
 
 set route and schedule in which to com-píete his work.
 
 Id.
 
 He failed to pick up the workers on his second day of work, and did not contact the owner until several days later, when he called to say that the van had been stolen. Id. On appeal, this Court upheld his conviction for La. R.S. 14:68.4, finding that he knew that his use of the van was unauthorized once he deviated | (¡from the route and schedule and failed to return the van.
 
 [2]
 

 Id.
 
 See also
 
 State v. Vanado,
 
 01-367 (La.App. 5 Cir. 9/13/01), 798 So.2d 191.
 
 [3]
 

 Similarly, in
 
 State v. Jefferson,
 
 97-2949 (La.App. 4 Cir. 4/21/99), 735 So.2d 769, this court upheld a conviction pursuant to La. R.S. 14:68.4. Defendant Jefferson was the driver of the car, which she insisted she had borrowed from someone, but only knew the person’s first name and did not know her address or phone number. This Court found that these factors could have made the jury suspicious of Jefferson’s innocence, along with the fact that the car contained a rental agreement in another person’s name, which should have alerted Jefferson that the car was stolen.
 
 [4]
 

 Defendant argues that because there was no damage to the car and that he used a key to enter and drive the car, the State did not establish that he knowingly used the car without permission, However, as noted by the State, the owner’s driver’s license was still inside the car, over the driver’s door, at the time the car was seized, as well as the car’s registration, which was listed in the owner’s name, Accordingly, defendant should have known that the car did not belong to him.
 
 See Jefferson, supra.
 
 Although defendant testified that he did not drive the car, that he |7only saw the car for the first time when the officers removed him from the residence, and that he did not have the key to the car, the officers’ testimony on each of these points plainly disputed that of defendant. It is well-settled that a factfinder’s credibility decision should not be disturbed unless clearly contrary to the evidence.
 
 State v. Huckabay,
 
 2000-1082 (La.App. 4 Cir. 2/6/02), 809 So.2d 1093;
 
 State v. Harris,
 
 99-3147 (La.App. 4 Cir. 5/31/00), 765 So.2d 432. In this case, the factfinder ostensibly found the officers’ testimony more credible than that of defendant. Moreover, the jury heard the owner’s testimony confirming that he neither knew defendant nor gave defendant permission to use his vehicle.
 

 
 *579
 
 For the foregoing reasons, we find that the State elicited sufficient evidence for the jury to find defendant guilty of the unauthorized use of a motor vehicle beyond a reasonable doubt. Accordingly, the defendant’s conviction and sentence are hereby affirmed.
 

 AFFIRMED.
 

 [1]
 

 . Det. Durel testified that he did not observe anyone else driving the car.
 

 [2]
 

 .Mr. Young's testimony at trial indicates that the defendant had authority to drive the van along a certain route at a certain time so as to drop off and pick up the Salvation Army workers. He did not have authority to use the van for his own purposes. Moreover, he was given a cell phone to use in emergencies. He diverted the van from its proper use, did not complete his route, and did not take the van back to the Salvation Army officer. Furthermore, he did not call his office to report any problem until after he was incarcerated. Obviously, the reasonable inference is that the defendant attempted to use the van belonging to the Salvation Army without its consent and for his own purposes after he received possession of it. The evidence supports the jury's guilty verdict. This assignment is without merit.
 

 State v. Coleman,
 
 830 So.2d 341, 343.
 

 [3]
 

 . Similarly, courts have upheld unauthorized use convictions in cases where defendants have taken cars from a dealer's lot for a “test drive” and not returned the cars. See
 
 State v. Spencer,
 
 97-811 (La.App. 5 Cir. 1/27/98), 707 So.2d 119;
 
 State v. Carmon,
 
 539 So.2d 752 (La.App. 3 Cir.1989).
 

 [4]
 

 . In upholding Jefferson's conviction, this Court distinguished
 
 State in Interest of O.B.,
 
 559 So.2d 31 (La.App. 4 Cir.1990). In that case, this Court reversed a delinquency adjudication based upon the fact that the defendant was the backseat passenger in a stolen car that had a key in the ignition and damage to the steering column that was not visible from the defendant's seat.