# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 09-544


STATE OF LOUISIANA

VERSUS

CODY LACOMBE


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 06-K-5972-A
HONORABLE JAMES PAUL DOHERTY, JR., DISTRICT JUDGE


\*\*\*\*\*\*\*\*\*\*


## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE


\*\*\*\*\*\*\*\*\*\*


Court composed of Ulysses Gene Thibodeaux, Chief Judge, Oswald A. Decuir, and Billy Howard Ezell, Judges.


**AFFIRMED AND REMANDED.**


**Earl B. Taylor**
**District Attorney, Twenty-Seventh Judicial District Court**
**Jennifer Ardoin**
**Assistant District Attorney, Twenty-Seventh Judicial District Court**
**P. O. Drawer 1968**
**Opelousas, LA 70571**
**Telephone: (337) 948-0551**
**COUNSEL FOR:**
    **Plaintiff/Appellee - State of Louisiana**


**Peggy J. Sullivan**
**Louisiana Appellate Project**
**P. O. Box 2775**
**Monroe, LA 71207-2775**
**Telephone: (318) 387-6124**
**COUNSEL FOR:**
    **Defendant/Appellant - Cody LaCombe**

**THIBODEAUX, Chief Judge.**

Defendant, Cody LaCombe, appeals his jury conviction for unauthorized use of a motor vehicle, a violation of La.R.S. 14:68.4, on the basis of insufficiency of the evidence. The evidence is sufficient. We affirm.

## LAW AND DISCUSSION

Defendant argues that while he may have been dilatory in his job performance, he did not possess the specific intent to take or use his employer's vehicle without consent or by means of fraudulent conduct. He argues that the State failed to submit any evidence that his absence with the vehicle was anything more than taking longer than necessary to complete the task assigned to him.

The unauthorized use of a motor vehicle is defined as, "[t]he intentional taking or use of a motor vehicle which belongs to another, either without the other's consent, or by means of fraudulent conduct, practices, or representations, but without any intention to deprive the other of the motor vehicle permanently." La.R.S. 14:68.4.

When discussing sufficiency of evidence on appeal, this court has held:

> "[T]he critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559, (La.1983); *State v. Duncan,* 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). The role of the factfinder is to weigh the respective credibility of each witness. Therefore, the appellate court should not second guess the credibility determinations of the factfinder beyond the sufficiency evaluations under the Jackson standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559, citing *State v. Richardson,* 425 So.2d 1228 (La.1983).

*State v. Miller,* 98-1873, p. 5 (La.App. 3 Cir. 10/13/99), 746 So.2d 118, 120, *writ denied,* 99-3259 (La. 5/5/00), 761 So.2d 541.

The employer and victim in this case was Dirk LeBlanc who, at the time of the offense, was principal owner of Freight Lines Transportation and Brokerage, Inc. He hired Defendant as a truck driver on or about November 14, 2006. Defendant's first haul began on the same day. He was directed to drive the company's eighteen-wheeler to San Antonio, Texas, make stops in Dallas, then Waxahachie, and make a final delivery in Carencro, Louisiana on Friday morning. Mr. LeBlanc communicated with Defendant on Monday and Tuesday. On Wednesday and Thursday, Defendant did not answer his cell phone or call the company. On Thursday, Mr. LeBlanc filed a report with the Lafayette Parish Sheriff's Office, which was submitted into evidence as State's exhibit number 1. The report stated:

> Driver (Cody J. LaCombe) was to deliver load from Waxahatchie, TX to Carencro, LA. Driver picked-up load but never delivered. He fueled up at 10:52 p.m. in Dallas TX 154 gallons. He fueled up again at 10:49 a.m. in Dallas, TX across the street from the first fueling, 213 gallons. The 18-wheeler can only hold approx. 180 gallons. Driver also has $1000.00 company check from the previous load he had hauled before this load. Can not find truck, trailer (loads), nor driver.

Defendant finally called Mr. LeBlanc on Sunday the 20th, stating that he needed fuel. Mr. LeBlanc explained that he had "cut off" the fuel card so Defendant had to call for authorization to fuel up the tractor. Mr. LeBlanc instructed him to go to King's Truck Stop and gave him an authorization code for enough fuel to get there. Mr. LeBlanc arranged for another driver to go to King's Truck Stop to take possession of the tractor and trailer and make the late delivery to Carencro.

2

When Defendant filled the tractor with fuel on Wednesday night, then again the following morning in the same area in Dallas, with more fuel than the tank could hold, the victim became nervous about the situation. Moreover, after the tractor and trailer were taken into custody, the odometer reading indicated an excess of seven hundred more miles. Mr. LeBlanc explained that the mileage of the routes was calculated using a "PC Miler." Mr. LeBlanc testified that Defendant was not authorized to go anywhere but the established route. He was not authorized to use the vehicle on either Saturday or Sunday.

Mr. LeBlanc testified that he never recovered from Defendant the one thousand dollar check issued to the company for transportation fees. All drivers are required to maintain a log book. No log book was found following Defendant's arrest.

Finally, Mr. LeBlanc testified that when Defendant called him Sunday morning, Defendant said he had been beaten up. Except for this last statement made by Defendant to Mr. LeBlanc, there was no explanation offered at trial as to Defendant's whereabouts or activities from Wednesday to Sunday.

Defendant argues that the facts of *State v. Bias*, 400 So.2d 650 (La.1981), are most analogous to the current case where the supreme court reversed a conviction for unauthorized use of a moveable, a violation of La.R.S. 14:68. In *Bias,* the defendant entered into a contract with a furniture store for the rental of a television for twenty dollars weekly. He defaulted. The supreme court stated:

> R.S. 14:68 may be violated by a taking or use either without the consent of the owner or by means of fraudulent conduct, practices, or representations. Here, the state's theory must be either (1) that the "use" of the movable was without the owner's consent, when defendant discontinued paying rent, or (2) that the "use" was by means of fraudulent practices, when defendant kept the set without making the agreed payments. We decline to accept a

3

theory that the mere failure to make rental payments as agreed constitutes a "use without consent" or a "use by fraudulent practices" for purposes of the statute.

. . . .

Affirmation of the conviction on the evidence in this record would require a holding that proof of breach of a rental agreement is alone sufficient to prove a "use without consent" or a "use by fraudulent practices, conduct, or representations." As stated before, we do not believe such a result was intended when the statute was enacted.

Perhaps the Legislature could enact a special criminal statute proscribing the failure to abide by the terms of a rental agreement. Nevertheless, we construe the present statute proscribing unauthorized use of a movable as requiring a showing of mens rea or criminal intent, since the "evil" state of mind of the actor normally distinguishes criminal acts (punishable by the state alone) from mere civil wrongs (actionable by private individuals against one another). C.Cr.P. art. 381. In *State v. Brown,* 389 So.2d 48 (La.1980), a case in which we construed a statute prohibiting possession of certain controlled substances to require proof of criminal intent, we stated:

> "(w)e observe the familiar proposition that '(t)he existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence.' *Dennis v. United States,* 341 U.S. 494, 500, 71 S.Ct. 857, 862, 95 L.Ed. 1137 (1951). In a much cited passage from *Morissette v. United States,* 342 U.S. 246, 250-251, 72 S.Ct. 240, 243, 244, 96 L.Ed. 288 (1952), the United States Supreme Court observed:
>
> > 'The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil. A relation between some mental element and punishment for a harmful act is almost as

4

instinctive as the child's familiar exculpatory "But I didn't mean to," and has afforded the rational basis for a tardy and unfinished substitution of deterrence and reformation in place of retaliation and vengeance as the motivation for public prosecution. Unqualified acceptance of this doctrine by English common law in the Eighteenth Century was indicated by Blackstone's sweeping statement that to constitute any crime there must first be a "vicious will.""

"The 'vicious will' has been replaced with less colorful descriptions of the mental state required for a criminal act; nevertheless, intent generally remains an indispensable element of a criminal offense." 389 So.2d at 50.

Finally, we note that the state may produce direct or circumstantial evidence of "fraudulent intent" in unauthorized use cases involving the initial acquisition of property by rental agreement. The evidence in this case, however, simply does not reasonably support the inference of fraudulent intent beyond a reasonable doubt.

*Id.* at 652-53.

Defendant argues that like *Bias*, the necessary criminal intent to distinguish a criminal act from a civil act is lacking. However, the State counters that *State v. Varnado*, 01-367 (La.App. 5 Cir. 9/13/01), 798 So.2d 191, is more applicable to the current case. In *Varnado*, the fifth circuit affirmed the defendant's conviction for unauthorized use of a motor vehicle. The defendant was employed as a truck driver for a company that supplied workers for offshore work. On a Friday, the defendant was instructed to drive other employees to Cameron in a company car. The defendant left early in the morning, and later in the day called and said he would be back to the office in the early evening. The defendant did not show up. The next

day the employer made several unsuccessful attempts to contact defendant. The following day, the vehicle was reported stolen. The defendant, however, showed up later in the day. He was charged with and convicted of unauthorized use of a motor vehicle. He appealed the conviction, arguing insufficient evidence. The fifth circuit examined *Bias*, then stated:

> In *State v. Bias,* 400 So.2d 650 (La.1981) the Louisiana Supreme Court, in clarifying the conduct proscribed by La.R.S. 14:68, reversed the defendant's conviction for unauthorized use of a movable under circumstances where the defendant had retained possession of a television set following default in rental payments. The Court held that the retention of the television set after the default in rental payments did not constitute "use without consent" or "use by fraudulent practices" for the purpose of the statute prohibiting the unauthorized use of a movable. In interpreting La.R.S. 14:68, the Louisiana Supreme Court expressly held that the "statute proscribing the unauthorized use of a movable requir[es] a showing or mens rea or criminal intent, since the 'evil' state of mind of the actor normally distinguishes criminal acts (punishable by the state alone) from mere civil wrongs (actionable by private individuals against one another)."

> In *State v. Spencer,* 97-811 (La.App. 5th Cir. 1/27/98), 707 So.2d 119, this Court applied *Bias* and held that although R.S. 14:68.4 does not require a person to act with an intent to deprive the owner permanently of his property, the statute requires the existence of fraudulent intent, which may be proven by circumstantial evidence. *Spencer, supra.*

> In *Spencer*, this Court found sufficient evidence to uphold the Defendant's conviction for unauthorized use of a motor vehicle when he took a vehicle from a car dealership for a test drive and did not return in a 24-hour period. Defendant argued there was insufficient evidence to prove he had the requisite criminal intent to commit the crime of unauthorized use of a motor vehicle. Citing testimony that the salesman did not give defendant permission to keep the car for 24 hours, this Court found that a rational jury could have found the requisite criminal intent beyond a reasonable doubt.

> In the present case, the jury heard the testimony of the Defendant's supervisor who stated that the Defendant

6

was to drive to and from Cameron on Friday, June 16, 2000, in one day. Thrasher explained that the Defendant was supposed to return the company vehicle on Friday. Thrasher spoke to the Defendant after he had dropped the crew off in Cameron and the Defendant stated that he would be back at the shop by 7:00 p.m. Thrasher testified that the Defendant was never authorized to take the vehicle for the weekend. In fact, Thrasher stated that employees are never permitted to take company cars home for the weekend. Furthermore, Thrasher testified that the Defendant never called the shop to report that he was running late. And, Thrasher explained that the Defendant never returned any pages or answered his cell phone when the company tried to contact him Friday night after he did not return as scheduled.

From these facts, a rational juror could have concluded that the Defendant took the company vehicle over the weekend without his employer's consent. Furthermore, a rational juror could have reasonably found that the Defendant possessed the requisite criminal intent based on the Defendant's failure to respond to his employer's numerous attempts to contact him and his failure to communicate with his employer for almost 48 hours beyond the time in which the vehicle was due back to the shop. Thus, we find that the State proved all of the essential elements of the crime of unauthorized use of a motor vehicle, beyond a reasonable doubt.

*Id.* at 193-94.

In *State v. Coleman,* 02-1487 (La.App. 4 Cir. 10/9/02), 830 So.2d 341, the fourth circuit found the facts supported a conviction for unauthorized use of a motor vehicle. The defendant was a driver for the Salvation Army. He was given the use of a van to pick up and deliver workers. He had a set route and schedule. After his second day, he failed to make the rounds and he did not contact the van's owner for several days thereafter. The fourth circuit noted that once the defendant "deviated from the route and schedule," he knew his use of the van was unauthorized.

A comparison of the facts in *Coleman* and *Varnado* to the facts in the current case indicates that Defendant had the requisite criminal intent beyond a reasonable doubt. He did not communicate with the company from Wednesday to the

following Sunday, despite frequent calls made to his cell phone. He failed to make the final delivery on Friday in Carencro. Testimony established that he traveled an additional seven hundred miles outside of the route. Moreover, Matthew Willey, a patrolman with the St. Landry Parish Sheriff's Office, who confronted and arrested Defendant at King's Truck Stop, testified that Defendant had no identification on him. Defendant did not have the thousand dollar check in his possession, nor was the log book he was required to maintain ever recovered at the time he was picked up at King's Truck Stop. Considering the above facts, a rational juror could have concluded that Defendant possessed the requisite criminal intent and took possession of the eighteen-wheeler without his employer's consent.

Defendant further argues that there was no evidence presented as to the exact time of the charges of the fuel, or when he picked up the load, or evidence presented indicating the distance between the location where he filled up and the location where the load was picked up. Basically, Defendant argues that the entire case was premised on the victim's testimony. However, "it is well-settled that the factfinder's credibility decision should not be disturbed unless clearly contrary to the evidence." *State v. Gilmore,* 08-1398, p. 7 (La.App. 4 Cir. 5/6/09), 11 So.3d 575, 578. Furthermore, this court has consistently held that a single witness's testimony, if believed by the factfinder, is sufficient to support the verdict in the absence of internal contradictions or irreconcilable conflict with the physical evidence. *State v. Henry,* 95-428 (La.App. 3 Cir. 10/4/95), 663 So.2d 309, *writ denied,* 96-681 (La. 5/16/97), 693 So.2d 793. The testimony of the victim and the circumstantial evidence was sufficient to support the conviction beyond a reasonable doubt.

**ERRORS PATENT**

As a condition of probation, the trial court ordered the Defendant to reimburse the Indigent Defender Board $100.00 without establishing a payment plan. Recently, in *State v. Wagner*, 07-128 (La.App. 3 Cir. 11/5/08), 996 So.2d 1208, this court held:

> When the fines and costs are imposed as a condition of probation, but the trial court is silent as to the mode of payment or the trial court attempts to establish a payment plan, this court has required a specific payment plan be established. *See State v. Theriot*, 04-897 (La.App. 3 Cir. 2/9/05), 893 So.2d 1016 (fine, court costs, cost of prosecution); *State v. Fuslier*, 07-572 (La.App. 3 Cir. 10/31/07), 970 So.2d 83 (fine and costs); and, *State v. Console*, 07-1422 (La.App. 3 Cir. 4/30/08), 981 So.2d 875 (fine and court costs).
>
> We view this procedure as no different from payment plans dealing with payment for restitution. *See State v. Dean*, 99-475 (La.App. 3 Cir. 11/3/99), 748 So.2d 57, *writ denied*, 99-3413 (La. 5/26/00), 762 So.2d 1101 (restitution only); *State v. Reynolds*, 99-1847 (La.App. 3 Cir. 6/7/00), 772 So.2d 128 (restitution, fine, and costs); *State v. Stevens*, 06-818 (La.App. 3 Cir. 1/31/07), 949 So.2d 597 (restitution, fine, court costs, and reimbursement to Indigent Defender Board); and, *State v. Fontenot*, 01-540 (La.App. 3 Cir. 11/7/01), 799 So.2d 1255 (restitution, court costs and payments to victim's fund, Indigent Defender Board, and District Attorney).
>
> Similarly, the payment to the crime lab fund to be paid during the probationary period was an insufficient payment plan, requiring remand to the trial court for establishment of a payment plan. The plan may either be determined by the trial court or by Probation and Parole, with approval by the trial court. *See Stevens*, 949 So.2d 597.

*Id.* at 1213.

Accordingly, we remand this case to the trial court for establishment of a payment plan for the reimbursement of the $100.00, noting that the plan may either be determined by the trial court or by the Office of Probation and Parole, with

approval by the trial court. *See State v. Stevens*, 06-818 (La.App. 3 Cir. 1/31/07) 949 So.2d 597.

## CONCLUSION

For the above reasons, we affirm Defendant's conviction. Furthermore, we remand this case to the trial court for establishment of a payment plan for the reimbursement of the $100.00 to the Indigent Defender Board, noting that the plan may either be determined by the trial court or by the Office of Probation and Parole, with approval by the trial court.

**AFFIRMED AND REMANDED.**