laCANNELLA, Judge.
Defendant, Kenny P. Winters, appeals from his sentence and conviction of simple battery on his wife, Sherry Winters. The conviction is affirmed, the sentence is affirmed as amended, and case is remanded.
A judge trial was held on February 24, 1994. The parties stipulated to leave the trial open for production of a certain court transcript of August 19,1993 from case number 92-4568, Division “G”, 24th Judicial District Court, entitled State of Louisiana verses Kenny P. Winters. In open court on September 15, 1994 the trial judge found defendant guilty as charged of the misdemeanor of simple battery, a violation of L.S.A.-R.S. 14:35. Defendant waived delays and the trial judge sentenced him to six months in the parish prison, suspended and inactive probation for one year, subject to the special condition that he have no further contact with the victim unless it is with her consent and permission. In addition, the trial judge ordered defendant to pay a fine of $350 plus court costs. On September 16, 1994, defendant filed a notice of intent to happly for supervisory writs to seek review of the September 15, 1994 ruling. On September 19, 1994, the tidal judge ordered a return date of November 3, 1994 for defendant’s writ application. Despite a return date hearing already been set for his writ application, on September 28, 1994 defendant filed a Motion for Appeal which was granted by the trial judge.
This case was lodged as an appeal although the proper means to seek review was by application for supervisory writs. See La. Const, of 1974, Art. 5, Subsection 10 and L.S.A-C.Cr.P. Art. 912.1.[1] While the appropriate procedural vehicle for defendant to seek review of this misdemeanor conviction is an application for supervisory writs, in the past we have treated an appeal improperly taken in a misdemeanor case as an application for supervisory writs, See: City of New Orleans v. Ballansaiv, 475 So.2d 768 (La. 1985); and State v. Fraychineaud, 620 So.2d *414 338 (La.App. 5th Cir.1993). However, this practice will be discontinued for cases filed after January 1, 1995, following en banc order which was issued by this court on December 9, 1994:
IT IS HEREBY ORDERED that, as of January 1, 1995, all nonappealable matters filed as an appeal will be dismissed. Accordingly, all parties will be required to follow and adhere to the procedural schemes set forth in our Louisiana Codes of Civil and Criminal Procedure.
Nevertheless, since this appeal was filed prior to January 1, 1995, we will treat |4this appeal as an application for supervisory writs.
There were two different versions of facts presented at trial. The victim testified that on November 8,1992, an altercation occurred at her residence between her and defendant, her husband. According to the victim:
My husband was sleeping. He was very intoxicated on some sort of drug, I wasn’t sure. It was some muscle relaxant of some sort, and alcohol. It was the day after his birthday. We had celebrated it the day before. He had gone upstairs and passed out. I was trying to figure out how to deal with the problem, deal with the situation. I was in the kitchen making some coffee. I wanted to talk to him for him to wake up. He had come down the stairs. I was in the kitchen making the coffee. He wanted to go to the store and get some beer. He wasn’t in any condition to do so. I talked to him and we talked about getting help for him for the alcoholism, the drugs. He had grabbed me at that point. I went to give him a hug to reassure him and also to try and convince him not to drive. He grabbed hold of me and pushed me down on the steps and jumped on me and started beating on me. In the process he was pushing me off the steps. He bit me in the shoulder. I was screaming at him, “Stop biting me.” I have a — had a huge bite mark on my shoulder. I was in shock and I fell down the stairs. At that point I got up and immediately called the police.
In addition, the victim also described the injuries she received by identifying photographs of her injuries taken the day after the incident. As a result of the injuries received, she was hospitalized for one week. On direct examination, she testified that she did not suffer from any blood disorders or medical conditions that would cause her to bruise easier than any other person. On cross-examination, she stated that at the time of the incident, she was on a muscle relaxant because of back pain.
The state also called Shayna Pump, the victim’s daughter. She testified that, at the time of the incident, she was in the living room watching television. She heard her mother and defendant talking about getting some help for his drug problems. She then saw defendant hit her mother in the face. In addition, she testified that the photographs were an accurate reflection of how her mother looked after the incident and further that her mother did not have any of those bruises or bite marks prior to the incident. At the time of the incident, she was residing in a psychiatric treatment facility, but she was on a home visit with her mother when the altercation occurred.
IsAfter the testimony of the state witnesses, defendant testified in his own behalf. His version of the events is as follows:
Earlier in the day, me and my wife, which was our usual habits when we was together, doing drugs for recreational purposes. In this case, it was muscle relaxers and codeine. With the case of muscle relaxers, they eventually put you to sleep and that’s what had happened to me; I had fell asleep. I went upstairs and went to bed. Then, later on she woke up, woke me up and told me I had to leave. So I went downstairs and I was getting ready to leave and she said, “Well, before you go, you better make some coffee.” So I started making coffee. At this point she switched personalities, one of her problems and she started yelling and screaming at me in an angry voice. She came at me with her fingers pointed at my eyes. Not knowing what she was going to do, I grabbed her by the wrist, pushed her back about three feet and she landed on the steps. I yelled and screamed at her that I was sick and tired of the insane, crazy crap *415 she was doing, and that was it. I wasn’t going to try to reconcile anything or see her again. I left the apartment at that point.
In addition, defendant testified that at rio time did he strike the victim or inflict any type of injury on her. He also claimed that his wife has a history of mental problems and she suffers from multiple personality disorder. According to defendant, after this incident, he discontinued all contact with the victim and changed his phone number twice to keep her from getting in touch with him. In addition, he contended that Shayna Pump was not present at the time of the incident.
On cross-examination, defendant admitted that on the day of the incident, he was taking-muscle relaxants and codeine in an attempt to get high. When shown the photographs of the victim’s injuries, he testified that he did not know if she had any of those bruises before the altercation because she always had bruises, that she was on a blood thinner, and that her main disease was vasculitis. In response to examination by the trial court, defendant testified that he took the muscle relaxers and codeine at about 3:00 P.M. and that the incident occurred at about 5:00 P.M. He also informed the trial court that, at the time of the incident, he and the victim were separated, and that he had, in fact, moved out several years before, but the victim attempted to hold the marriage together.
After defendant testified, the state recalled the victim. She stated that she was |6treated in Houston and diagnosed with multiple personality disorder, but she was there for treatment for sexual trauma. She claimed that the facility diagnosed everyone with multiple personality disorder, and they are now under government investigation. She also testified that her daughter was, in fact, present at the time of the incident because she came home every weekend and that defendant did not know what their patterns were because he had not seen them for about four or five months.
After this testimony, the trial judge held the matter open pending a review of a transcript that defense counsel wanted the trial court to consider. The transcript is from a certain proceeding that took place on August 19, 1993 in Division “G” of the 24th Judicial District Court. In that proceeding, the victim testified about a battery that occurred on her on April 12,1992. She testified that she had written a letter to her husband about the problems in their marriage and her desire to get help. She gave him the letter but later found it thrown on the floor. After she asked him about the letter twice, defendant arose from the sofa, threw his newspaper down, grabbed her by both hands and wrists, crossed them over each other, and shoved them against her chest. During this encounter, she was hit in the mouth and head. At this point, she was in a state of shock and was quite concerned because she was on blood thinners. After he struck her, she immediately called the police. In this prior transcript, the victim admitted that she took blood thinners, that she bruised easily as a result of taking them, and that she had a multiple personality disorder.
Following presentation of the conflicting evidence, the trial judge determined that defendant was guilty of the charge. In reaching this conclusion, he found that the testimony of the victim and her daughter was more credible than the testimony of defendant. When the trial court is presented with conflicting testimony, the credibility of the witnesses is a matter within the sound discretion of the trier of fact and will not be disturbed on review unless clearly contrary to the evidence. State v. Rader, 609 So.2d 857 (La.App. 5th Cir.1992); State v. Richardson, 425 So.2d 1228 (La.1983).
|7On appeal, defendant contests his conviction by requesting a review for patent error. Also, defendant contends that the trial judge erred by not giving him credit for time served under La.C.Cr.P. Art. 880 which provides:
“The court, when it imposes sentence, shall give a defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence.”
Since art. 880 is mandatory in nature, defendant is entitled to credit for time served. The State concedes that this argument has merit. Accordingly, defendant’s sentence is amended to reflect credit for time served.
*416 In regard to error patent review, in State v. Tambwro, 650 So.2d 307 (La.App. 5th Cir. 1995), this court noted that “the law does not accord us the right to review for error patent in a writ scenario.”
At the time of sentencing, the trial judge did not inform defendant of the prescriptive period for post-conviction relief as is mandated by LSA-C.Cr.P. art. 930.8C. However, failure to inform defendant does not constitute grounds for reversing the sentence or remanding the case for resentenc-ing. LSA-C.Cr.P. art. 921. Rather it appears that the appropriate remedy would be to remand and to instruct the trial court to inform defendant of the provisions of LSA-C.Cr.P. art. 930.8 by sending appropriate written notice to defendant within 10 days of the rendition of this opinion and to file written proof that defendant received the notice in the record of the proceedings.
Accordingly, the defendant’s conviction is affirmed. The sentence is hereby amended to give credit for time served. The defendant’s sentence is otherwise affirmed and the case is remanded.
CONVICTION AFFIRMED, SENTENCE AMENDED AND AS AMENDED AFFIRMED, CASE IS REMANDED.

. LSA-C.Cr.P. art. 912.1 reads as follows:
A. The defendant may appeal to the supreme court from a judgment in a capital case in which a sentence of death actually has been imposed.
B. The defendant may appeal to the court of appeal from a judgment in a criminal case triable by jury, except as provided in Paragraph A of this Article.
C. (1) In all other cases not otherwise provided by law, the defendant has the right of judicial review by application to the court of appeal for a writ of review. This application shall be accompanied by a complete record of all evidence upon which the judgment is based unless the defendant intelligently waives the right to cause all or any portion of the record to accompany the application.
(2) An application for review by the defendant shall not suspend the execution of sentence, unless the defendant is admitted to post conviction bail.