PER CURIAM.
_JjThe state filed a delinquency petition in the Juvenile Court for Orleans Parish charging defendant with unauthorized use of a motor vehicle, La.R.S. 14:68.4, and resisting an officer, in violation of La.R.S. 14:108. After a hearing conducted on January 18, 2011, the court adjudicated defendant delinquent on the basis of both charges and placed him with the Office of Juvenile Justice for a total of one year, suspended, with two years’ active probation. On defendant’s appeal of his felony-grade delinquent act of unauthorized use of a motor vehicle, a divided panel on the Fourth Circuit reversed the juvenile court’s adjudication and disposition order as to that charge on grounds that “[t]he juvenile-court judge was clearly wrong in adjudicating D.M. a delinquent because the evidence is insufficient to find beyond a reasonable doubt that D.M. knew that the vehicle in which he was a passenger was taken without the consent of its owner.” State in the Interest of D.M., 11-0462, p. 1 (La.App. 4th Cir. 11/2/11), 80 So.3d 18, 19. We granted the state’s application for review of the court of appeal’s decision and reverse for the following reasons.
As detailed in the evidence presented at the delinquency hearing, on October 22, 2010, Officer Blake Terrell received information that a silver Dodge Grand Caravan had been stolen from the 1000 block of Florida Street in Algiers, Louisiana. Terrell was patrolling the Fourth District in an unmarked police car and |ahe began searching for the stolen vehicle. Approximately two hours later, the officer observed the vehicle, occupied by four persons, and radioed for back-up units to assist him as he followed the van. When the marked cars arrived on the scene, Terrell activated his lights and siren but the van sped away and engaged the police in a chase through the Algiers Point area. The chase ended at the levee, where the vehicle stopped and the occupants spilled out and ran up the levee into the nearby woods, two running in *297 one direction and two running in the opposite direction. Defendant was among them and Terrell observed that he exited from the rear seat on the driver’s side. The driver, who ran with defendant, had left the van in reverse and the vehicle backed into the police units arriving on the scene. Terrell reached into the van, put the transmission into park as there was no key in the ignition to turn the engine off, and then pursued the fleeing suspects. Within minutes, and with the aid of a K-9 dog, the police had defendant and the driver of the van in custody after a brief confrontation in which the dog bit defendant in the leg. Upon inspecting the van, Terrell observed that while the interior of the vehicle otherwise appeared undamaged, the top covering of the ignition lock cylinder had been pulled off and was simply resting unattached on the steering column. Although it was dark, and “hard to really get a good look at it,” and the officer was reluctant “to mess with the evidence before [the] Crime Lab did,” Terrell testified he sat in the driver’s seat and then went into the back seat to retrieve a weapon. From both vantage points, “you could tell that the vehicle had been tampered with in a way to get it started.” Terrell acknowledged that when he went into the back seat to secure the weapon, he did not actually sit behind the driver’s seat, and, at that time, no one was occupying the seat.
The owner of the vehicle testified at the hearing and confirmed that her vehicle had been taken without her permission. A photograph of the interior she [shad taken through the opened door on the front passenger side, introduced as an exhibit at the hearing, clearly showed the damage to the steering column, which did not amount to more than removal of the top cover of the ignition, exposing the ignition lock cylinder. However, when asked whether a passenger seated behind the driver could have seen the damaged steering column, the victim conceded she had never sat in the back seat and therefore could not venture an opinion one way or the other.
In adjudicating defendant delinquent at the close of the hearing, the juvenile court judge specifically noted that the defense’s own photographic exhibit clearly displayed the keyless, defeated ignition, “indicating that the driver of the car was not actually the owner of the car.” The court further noted that the initial attempt by the police to stop the vehicle had prompted a high-speed chase “which, then, led to the suspects fleeing the car and running from the police at that time.” Given the visible damage to the steering column and the flight of all of the occupants of the vehicle after the pursuit with the police, the court found sufficient evidence to adjudicate defendant delinquent on the basis of his unauthorized use of a motor vehicle.
The majority on the court of appeal panel had no dispute with the juvenile court judge that the photograph taken of the vehicle by its owner clearly established that “the steering-column damage was visible from anywhere in the front seat.” D.M., 11-0462 at 6, 80 So.3d at 21. However, given the testimony of Officer Terrell and the vehicle’s owner that they did not sit in the back seat on either side of the van, the majority observed that there was “no direct or circumstantial evidence that from D.M.’s position in the van he could have observed the only damage to the vehicle or that he could have observed whether the van was being operated without a key in the ignition.” Id., 11-0462 at 7, 80 4So.3d at 22. On the premise that the offense of unauthorized use of a motor vehicle required the state to prove more than defendant’s mere presence in the vehicle to establish that he was a principal in the offense because he knew, or reason *298 ably should have known, the vehicle was operated without the owner’s permission, cf. State v. Bias, 400 So.2d 650, 652 (La.1981)(“[W]e construe the present statute proscribing unauthorized use of a movable as requiring a showing of mens rea or criminal intent-”), the majority concluded that the state’s case turned on the question whether defendant’s flight and concealment constituted reliable circumstantial evidence of his “ ‘consciousness of guilt and, therefore, [ ] one of the circumstances from which the [fact finder] may infer guilt.’ ” D.M., 11-0462 at 7, 80 So.3d at 22 (quoting State v. Davies, 350 So.2d 586, 588 (La.1977)); see also State v. Wilkerson, 403 So.2d 652, 659 (La.1981).
To resolve the question, the majority reviewed the evidence under not only the due process, rational fact finder test of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), but also under a broader civil standard by which an appellate court may review both the facts and law, specifically, the trial court’s factual findings, for clear or manifest error, “to determine whether there is sufficient evidence to satisfy the standard of proof beyond a reasonable doubt.” D.M., 11-0462 at 8, 80 So.3d at 22. The source for the latter approach is this Court’s decision in State in Interest of Batiste, 367 So.2d 784, 788 (La.1979) (“Juvenile delinquency proceedings do not fall within the category of criminal prosecutions, as is evident from long established jurisprudence.... Accordingly, since the constitution does not provide otherwise, the scope of review of this Court in juvenile delinquency proceedings extends to both the law and the facts.”) (citations omitted). Both standards are highly deferential to the factual determinations made by the trier of fact. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989), (“[I]f the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.”); State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La.1983) (“It is the role of the fact-finder to weigh the respective credibilities of the witnesses, and this court will not second-guess the credibility determinations of the trier of fact beyond our sufficiency evaluations under the Jackson standard of review.”) (citation omitted). However, the majority observed that the “manifest-error” standard does not require an appellate court to review the evidence from the perspective of a hypothetical, pro-prosecution trier of fact, as does the Jackson due process standard, but “looks to this particular trier of fact” to determine “whether his or her decision that there was proof beyond a reasonable doubt is not clearly wrong and is reasonable.” D.M., 11-0462 at 9, 80 So.3d at 23.
Applying this “somewhat broader standard than the Jackson v. Virginia minimum standard,” id., the majority concluded that while “D.M.’s flight coupled with his presence in a stolen car most assuredly [gave] rise to the probable cause necessary for his arrest,” it did not “satisfy the high burden of proof necessary to establish the element of knowledge beyond a reasonable doubt.” Id., 11-0462 at 10, 80 So.3d at 24. Thus, “[j]ust as was done in Batiste, having applied this civil standard of review of facts and law,” the majority determined “that the juvenile court judge was clearly wrong in inferring from D.M.’s flight from the police that he knew beyond a reasonable doubt that the van was stolen.... and that he committed the delinquent act.” Id., 11-0462 at 11, 80 So.3d at 24.
Dissenting, Judge Dysart noted Officer Terrell’s statement on cross-examination, in response to a direct question by defense counsel, that he entered the rear passenger seat of the van from the driver’s side. *299 Id., 11-0462 at 1, 80 6So.3d at 24 (Dysart, J., dissenting). For Judge Dysart, “[t]his testimonial evidence is sufficient to prove that the defendant could indeed see from his seat in the van that the steering column had been defeated, and therefore, knew the car was stolen.” Id. 'Thus, in Judge Dysart’s view, and applying the same “manifest error/clearly wrong standard enunciated in the majority’s opinion,” the evidence appeared “sufficient to affirm the adjudication of the trial court.” Id.
We agree with Judge Dysart’s reading of the record and thus subscribe to his conclusion that the state’s evidence was sufficient to sustain the juvenile court’s adjudication under either standard of review applied in the majority opinion. When first asked by defense counsel on cross-examination how he had gone into the back seat of the vehicle while waiting for the Crime Lab to arrive and process the scene, Officer Terrell stated that he “entered through the rear passenger side of the vehicle, the rear passenger seat, to retrieve the rifle .... you can get an angle from the back of the seat, that the steering column was defeated.” Officer Terrell’s reference to the “rear passenger side of the vehicle” prompted the majority’s observation that “the officer had climbed into the backseat and noted that from the passenger-side he could see the steering-column damage from an angle.” D.M., 11-0462 at 6, 80 So.3d at 21-22. The majority deemed that testimony significant because, in its view, there was no testimony by the officer that he was on the other side of the vehicle behind the driver’s seat where defendant had been sitting and, thus, there was no direct evidence that the damaged steering column was visible from that vantage point. However, unsure whether the officer had meant the rear passenger side or the rear passenger seat, defense counsel then asked Terrell directly, “And what side of the rear passenger did you enter from?” The officer replied, “The driver’s side.”
17Although the juvenile court judge did not make a specific finding of fact in this respect, he found the officer a credible witness and it was not manifestly or clearly wrong for the court to take the officer at his word that Terrell entered the backseat from the rear driver’s side and from that vantage point observed the damage to the steering column and the absence of a key in the ignition lock. The majority read Terrell’s testimony differently but it also acknowledged, as Judge Dysart implicitly reminded them, that under a civil standard of review, the court was not free to “disturb ‘reasonable inferences of fact’ even though we may feel that our ‘own evaluations and inferences are as reasonable.’” D.M., 11-0462 at 10, 80 So.3d at 23 (quoting Rosell, 549 So.2d at 844). A finding that Terrell entered the rear passenger seat from the driver’s side meant that anyone stepping into the vehicle through the rear, driver’s side door would have an opportunity to view the damaged steering column and the defeated, keyless ignition, as would anyone entering from the rear passenger side and then sliding over behind the driver’s seat. There was no direct evidence of how defendant entered the back seat of the vehicle, or for how long he was there, or whether he actually observed the broken steering column. However, while defense counsel hotly disputed whether anyone in the rear passenger seat on the driver’s side could have seen the damaged steering column and keyless ignition, counsel offered no innocent explanation for defendant’s flight and attempt at concealment in the woods and in the company of the driver, who had to have known that the vehicle was stolen, not even that defendant had simply panicked when the other occupants of the vehicle fled up the levee. It was therefore not manifestly *300 wrong for the juvenile court judge to infer from defendant’s flight, concealment, and initial resistance to arrest, knowledge the vehicle had been stolen, if for no other reason than he had, in fact, observed the damage to the steering column and the keyless ignition, and for the court to | ^conclude that by riding around in the van with the other occupants, defendant had made himself a principal in the offense of unauthorized use of a motor vehicle, a finding that any rational trier of fact could make under the Jackson due process standard. Cf. State v. Joseph, 05-368, pp. 7-8, (La.App. 5th Cir. 1/17/06), 921 So.2d 1060, 1064 (defeated ignition with a fake key inserted in steering column wrapped in duct tape supported finding that defendant “saw the obvious signs of theft and knew the vehicle was stolen”); compare State v. Stevenson, 02-1152 (La.App. 4th Cir. 1/22/03), 839 So.2d 203, 206 (evidence insufficient to support conviction for unauthorized use of a vehicle: the occupants denied knowing the car was stolen and cooperated with the police in their investigation; and the driver had the vehicle keys); State in Interest of H.N., 97-0982, pp. 4-5 (La.App. 4th Cir. 7/8/98), 717 So.2d 666, 668 (evidence insufficient to support conviction for unauthorized use of a vehicle when there was no evidence of force entry, no broken glass or damage to the steering column, and a key was in the ignition when defendant entered the car).
The decision of the court of appeal is therefore reversed and the adjudication and disposition order of the juvenile court are reinstated.
COURT OF APPEAL DECISION REVERSED; ADJUDICATION AND DISPOSITION REINSTATED