DRAKE, J.
|2The State of Louisiana filed a petition alleging that J.J., a sixteen-year-old child, should be adjudicated delinquent, and/or in need of supervision based upon the commission of illegal possession of a handgun (second offense), a violation of La. R.S. 14:95.8(B)(2) (count 1); illegal carrying of a weapon with a controlled dangerous substance, a violation of La. R.S. 14:95(E) (count 2); unauthorized use of a motor vehicle, a violation of La. R.S. 14:68.4 (count 3); illegal carrying of a weapon, a violation of La. R.S. 14:95(A) (count 4); resisting an officer, a violation of La. R.S. 14:108 (count 5); flight from an officer, a violation of La. R.S. 14:108.1 (count 6); and theft of a motor vehicle valued at greater than $1,500.00, a violation of La. R.S.' 14:67.26(0(1) (count 7). J.J. denied each allegation of the petition. Following testimony at the adjudication hearing, the juvenile court granted a directed verdict of acquittal as to counts 1, 2, 4, 6, and 7. Thereafter, the juvenile court adjudged J.J. delinquent as to counts 3 and 5 of the petition. On count 3, the juvenile court ordered J.J. committed to the Department of Public Safety and Corrections (DPSC) for twelve months. On count 5, the juvenile court ordered J.J. committed to.the DPSC for six months, concurrent with the disposition on count 3. J.J. has appealed, challenging only the sufficiency of the evidence related to his adjudication on count 3. For the following reasons, we affirm the adjudications and dispositions on counts 3 and 5.

*112
FACTS

On August 1, 2015, Deonta Courtney-reported his vehicle, a 2013 Dodge Challenger, as stolen. Mr. Courtney described that the vehicle contained a push-start mechanism that allowed the car to start without keys in the ignition, as long as the key fob was inside or near the vehicle. Sometime after his vehicle was stolen, | abut prior to its recovery, Mr. Courtney was informed that' the police had found his license plate.[1]
Just after midnight on August 10, 2015, Officer Brandon Farris was responding to a call in the “Banks” area of Baton Rouge, near 72nd Avenue. As Officer Farris was en route to the call, which was presumably unrelated to the instant events, Officer Farris saw a Dodge Challenger (later identified as belonging to Mr. Courtney) make a left turn and begin to travel at a high rate of speed. Officer Farris observed that the vehicle contained more people than its capacity,[2] and he also witnessed the vehicle run a stop sign. Officer Farris turned to follow the car and attempted to make a traffic stop.
As Officer Farris approached the vehicle with his lights activated, its occupants began to bail out as the car continued in motion and ultimately crashed into a ditch. Officer Farris saw at least one individual run north and two individuals run south.[3] Officer Farris briefly chased the southbound individuals. During this chase", Officer Farris was in uniform, and he gave the suspects a command to stop, but they continued to run and eventually jumped Over a privacy fence.' Officer Farris backed off of his' pursuit to secure the crashed vehicle as other officers established a. perimeter. In an ensuing canine search, police officers located two subjects (J.J. and Michael Williams, an eighteen-year-old male) sitting on a porch approximately fifty- yards from where Officer Farris had last seen the fleeing individuals. Officer Farris later identified these subjects as the individuals he had chased from the vehicle. However, Officer Farris was unable to identify either individual as the driver of the vehicle.
|4In securing the crashed vehicle, Officer Farris used the push-start mechanism' to stop the engine. He noted that the key fob was not recovered during an inventory of the vehicle. In addition, Officer Farris’s investigation revealed that the license plate attached to the vehicle did not match the vehicle identification number. Mr. Courtney confirmed that there was no damage to the push-start mechanism when he recovered the vehicle, but he did note damage to the vehicle’s doors. Further, he testified that several items were missing from the vehicle, including a TWIC card, an OSHA card, and a pair of boots. Additionally, his vehicle contained multiple items not belonging to him, including a child’s car seat, a baby bottle, a bundle of auxiliary cords, some cigar paper, and a cell phone. Mr. Courtney stated at the adjudication hearing that he never gave anyone permission to use his car on the day it was stolen, nor did he know J.J. or Michael Williams, J.J. did not make any statements to the police, nor did he testily at the adjudication hearing.

*113
SUFFICIENCY OF THE EVIDENCE

In his first assignment of error, J.J. argues that there was insufficient evidence to support the adjudication of delinquency for unauthorized use of a motor vehicle. J.J. contends that the state’s evidence does not adequately demonstrate that he had any criminal intent.
In a juvenile adjudication proceeding, the state must prove beyond a reasonable doubt that the child committed a delinquent act alleged in the petition. La; Ch.C. art. 883. The burden of proof, beyond a reasonable doubt, is no less severe than the burden of proof required in an adult proceeding. State in Interest of S.T., 95-2187 (La.App. 1 Cir. 6/28/96), 677 So.2d 1071, 1074. In State in Interest of Giangrosso, 385 So.2d 471, 476 (La.App. 1st Cir.1980), affirmed, 395 So.2d 709 (La.1981), this court stated:
Uln juvenile proceedings, the scope of review of this court extends to both law and fact. Article 5, Section 10, Constitution of 1974; see State in Interest of Batiste, 367 So.2d 784 (La.1979). We must, therefore, decide if the trial judge was clearly wrong in his determination that the defendants were proven guilty beyond a reasonable doubt.
Thereafter, in State in Interest of Giangrosso, 395 So.2d 709, 714 (La.1981), the Supreme Court affirmed this court, concluding that a rational trier of fact could have found, from the evidence adduced at the trial, proof of guilt beyond a reasonable doubt, citing Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and State in Interest of Batiste, 367 So.2d 784 (La.1979). See In Interest of L.C., 96-2511 (La.App. 1 Cir. 6/20/97), 696 So.2d 668, 669-70.
Accordingly, on appeal the standard of review for sufficiency of the evidence enunciated in Jackson is applicable to delinquency cases, i.e., viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the state proved the essential elements of the crime beyond a reasonable doubt. Jackson, 443 , U.S. at 319, 99 S.Ct. at 2789; see also La. C.Cr.P. art. 821(B);[4] State v. Ordodi, 2006-0207 (La.11/29/06), 946 So.2d 654, 660; and State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988).
Further, because a review of the law and facts in a juvenile delinquency proceeding is constitutionally mandated, an appellate court must review the record to determine if tlie trial court was clearly wrong in its factual findings. See State in Interest of D.M., 97-0628 (La.App. 1 Cir. 11/7/97), 704 So.2d 786, 789-90. In a juvenile case, when there is evidence before the trier of fact that, upon its reasonable evaluation of .credibility, , furnished a factual basis for its finding, on review the appellate court should not disturb this factual finding jn the absence of manifest error. Reasonable .evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. State in Interest of Wilkerson, 542 So.2d 577, 581 (La.App. 1st Cir.1989).
The Jackson■ standard is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt.: When analyzing circumstantial evidence, La. R.S. 15:438 provides that, assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. State ex rel. D.F., 2008-0182 (La.App. 1 Cir. 6/6/08), 991 *114 So.2d 1082, 1085, writ denied, 2008-1540 (La.3/27/09), 5 So.3d 138.
Unauthorized use of a motor vehicle is the intentional taking or use of a motor vehicle which belongs to another, either without the other’s consent, or by means of fraudulent conduct, practices, or representations, but without any intention to deprive the other of the motor vehicle permanently. La. R.S. 14:68.4(A).
Initially, we note that the state did not attempt to establish or even argue that the child participated in the theft of the vehicle.[5] Such is not a required element of the offense of unauthorized use of a vehicle. See La. R.S. 14:68.4(A). The state can meet its burden of proof by proving that the perpetrator was aware that he was driving a stolen vehicle, as there is a presumption that there can be no legitimate permission given to drive a stolen vehicle. See State v. Macon, 2006-0481 (La.6/1/07), 957 So.2d 1280, 1286. However, this showing is also not required, so the state’s failure to prove J. J.’s identity as the driver of the vehicle is not fatal. To support the conviction, the state was only required to prove that the child intentionally utilized the vehicle without the permission of the vehicle’s owner. A17showing of mens rea or criminal intent is an essential element of the offense. See State v. Bias, 400 So.2d 650, 652-53 (La.1981).
In State in Interest of O.B., 559 So.2d 31 (La.App. 4th Cir.1990), the Fourth Circuit reversed two juveniles’ convictions for unauthorized use of a movable.[6] In O.B., two juvenile passengers in a stolen vehicle were arrested after they tried to flee following an adult driver’s attempt to evade the police.. One of the juveniles, W.L., was arrested as soon as he attempted to run; the other, O.B., was found hiding in a fenced-in yard several blocks away. O.B., 559 So.2d at 32. The vehicle’s owner and one of the arresting officers testified that the overt evidence indicating the vehicle had been stolen — a broken steering column — would not have been visible to anyone except the driver. O.B., 559 So.2d at 33. O.B. testified at trial that he and W.L. had accepted a ride from the adult driver, rather than continuing to wait for a bus. He further testified that he was unaware the vehicle was stolen and could not see the broken steering column or its pieces. O.B., 559 So.2d at 33. The Fourth Circuit reversed the juveniles’ convictions, finding that the state provided “insufficient evidence to prove that O.B. and/or W.L. took or used the vehicle with the knowledge that it was stolen.” O.B., 559 So.2d at 33.
In State in Interest of H.N., 97-0982 (La.App. 4 Cir. 7/8/98), 717 So.2d 666, writ denied, 98-2099 (La.12/11/98), 729 So.2d 589, the Fourth Circuit reversed three juveniles’ convictions for unauthorized use of a movable. The three juveniles were identified as passengers in a fleeing vehicle[7] that had been driven by an individual who escaped apprehension. H.N., 717 So.2d at 667-68. H.N. testified that he and two friends had been offered- a ride by the *115 driver, who he knew from his neighborhood. All three juveniles testified that they had no knowledge that the ear was stolen, and two of them stated that there was a key in the ignition and no visible damage to the vehicle. H.N., 717 So.2d at 668. According to two of the juveniles, the driver told them to run from the police as he abandoned the vehicle. H.N., 717 So.2d at 668. The Fourth Circuit reversed the convictions, finding that the state failed to prove the elements of unauthorized use of a movable. ■ The court specifically noted the presence of a key, the lack of damage to the vehicle, and the defendants’ testimony that they fled because they panicked. H.N., 717 So.2d at 668.
In State v. Jefferson, 97-2949 (La.App. 4 Cir. 4/21/99), 735 So.2d 769, the Fourth Circuit upheld a defendant’s conviction for unauthorized use of a motor vehicle. In Jefferson,' the defendant was a passenger in a stolen rental Vehicle, which the police stopped without incident on April 25,1996. The occupants of the vehicle had possession of the vehicle’s ignition key, and the vehicle’s steering wheel and column were intact, as were all the windows. The driver of the vehicle produced his driver’s license, but was unable to produce a vehicle registration. Upon further investigation, the police determined that the vehicle had been rented in Tennessee, and never, returned, by a Janet W. Naff (who was not one of the vehicle’s occupants) almost one year earlier. After her arrest, Jefferson admitted she did not own the vehicle, but she told the investigating officer that she had borrowed the vehicle from a woman who lived in New Orleans East. However, Jefferson only knew the woman’s first name, and not her last name, address, or telephone number. Jefferson, 735 So.2d at 771. The Fourth Circuit upheld Jefferson’s conviction, distinguishing O.B. by pointing out that Jefferson was not simply a passenger, but she claimed to have borrowed the vehicle from a woman, who in large part, was unidentifiable. The court remarked that this story was | /‘suspicious and indicative of criminal knowledge and/or intent.” The court also noted the presence of the rental agreement containing Naff s name as evidence that Jefferson knew or should have known the vehicle did not belong to the friend from .whom she allegedly borrowed the vehicle. Jefferson, 735 So.2d at 773.
In State in Interest of D.M., 2011-2588 (La.6/29/12), 91 So.3d 296 (per curiam), the Louisiana Supreme Court reversed a decision of the Fourth Circuit and reinstated a juvenile’s adjudication and disposition for unauthorized use of a motor vehicle. D.M. was a back seat, driver’s side passenger in a stolen vehicle that led the police on a brief car chase. The four occupants of the vehicle fled, but D.M. and the driver were arrested shortly thereafter. D.M., 91 So.3d at 296-97. The officer who initiated the pursuit testified that he entered the vehicle after its abandonment and observed that, while the interior otherwise appeared undamaged, the top covering of the ignition lock cylinder had been pulled off and was simply resting unattached on the steéririg column. The officer'observed the defeated ignition both from the driver’s seat and from the back seat area where D.M. had been sitting during the pursuit. D.M., 91 So.3d at 297, 298-99. The supreme court found that the Fourth Circuit majority erred in discounting this testimony and disturbing the' juvenile court’s reasonable inferences of fact that could be made therefrom. D.M., 91 So.3d at 299. The supreme court concluded that it was not manifestly wrong for the juvenile court to infer from the defendant’s flight, concealment, and initial resistance to arrest, a knowledge that the vehicle had been stolen, especially in light of the officer’s testimony regarding the visible dam *116 age to the vehicle from the defendant’s seat. D.M., 91 So.3d at 299-300.
The issue of whether J.J. intentionally utilized the vehicle with knowledge that he did not have permission of the vehicle’s owner is very fact sensitive. On one handj there is evidence which casts doubt on JJ.’s guilty mind with respect to unauthorized use of a motor vehicle. Officer Far-ris could'not identify J.J. as the | indriver of the vehicle, nor did he give any testimony regarding J.J.’s position in the vehicle. Additionally, outside of the body damage likely caused when the vehicle crashed into the ditch, the vehicle did not show any apparent signs of having been tampered with. Most importantly,' the push-start mechanism was intact. Further, the police never recovered any property evidence that may have overtly demonstrated another’s ownership of the vehicle (namely, the victim’s OSHA and TWIC cards) to occupants who may hot have participated in its taking. Lastly, the stolen vehicle was recovered over one week after its theft, perhaps lessening the inference that all of its occupants may have participated in the theft.
On the other hand, the evidence demonstrates that J.J. was a juvenile associating with at least one adult and several other individuals, all of whom had no lawful claim to the vehicle, J. J. was present with these other individuals after midnight, in a car filled past its capacity and being driven in an unsafe manner. When Officer Farris attempted to make a traffic stop of the vehicle, J.J. joined the other occupants in bailing out, fleeing the pólice, and concealing himself, actions which tend to indicate some degree of guilty knowledge. There was no evidence introduced at the adjudication hearing concerning any contraband present. in. the vehicle that may have caused J. J. to run even if he had no knowledge that his use of the vehicle Was- unauthorized.[8]
The state did not have to prove that J.J. knew the vehicle had been stolen, nor did it have to prove that J.J. was the driver of the vehicle. The state simply had to prove that J.J. intentionally utilized the vehicle without permission of its owner. This proof necessarily required a showing of mens rea or criminal intent. See Bias, 400 So.2d at 652-53. Considering the record as a whole, we see no reason to disturb the juvenile court’s reasonable inference of fact that J.J. knew he was using |nthe vehicle without permission of its owner. See D.M., 91 So.3d at 299. Regardless of whether he actually drove the vehicle or not, the uncontroverted evidence indicates that J.J. actively participated in overcrowding the vehicle as he, a minor, was being driven around after midnight with at least one adult who also did not have permission to use the vehicle. Upon being alerted to Officer Farris’s presence, J.J. joined the vehicle’s other occupants in fleeing the scene. J.J. fled despite the absence of evidence of any contraband in the vehicle. On these facts, it was not unreasonable for the juvenile court to infer that J.J. knew the vehicle’s use to be unauthorized.
We recognize that the intact starting mechanism and’the owner’s missing identification cards may raise some doubt about J.J.’s knowledge of the vehicle’s unauthorized use.’ See H.N., 717 So.2d at 668; compare Jefferson, 735 So.2d at 773. Nonetheless, we cannot say that these facts alone, in the face of the totality of the circumstances, give rise to á reasonable *117 doubt. Officer Farris’s observations about the occupancy level of the vehicle and its recklessly driven manner, combined with J.J.’s flight and subsequent apprehension with an adult having no lawful claim to the vehicle, gave rise to a reasonable.inference that J.J. possessed the guilty mind required to support an adjudication for this offense. See D.M., 91 So.3d at 299-300 (flight and concealment, plus additional circumstances, can lead to a reasonable inference of fact concerning a guilty mind).
After undertaking -the mandated review of the law and facts in a juvenile proceeding, we cannot conclude that the judge was manifestly erroneous or clearly wrong in her adjudication of delinquency based on the commission of this offense.
This assignment of error, is without.merit. , .
ADJUDICATION AFFIRMED; DISPOSITIONS ON COUNTS 3 AND 5 AFFIRMED.

. Following our review of the record, it is unclear where the license plate was recovered.

. Officer Farris stated that the front seat was full, and the back seat contained three or four people.

. Officer Farris explained that there could have been more individuals who fled without him being able to see them.

. In the absence of specific procedures provided by the Louisiana Children's Code, the court shall proceed in accordance with the Louisiana Code of Criminal Procedure. See La. Ch.C. art. 803. . .

. We recognize that the offense of motor vehicle theft was alleged in the petition, but the state presented no evidence at the adjudication hearing tying J.J. to the actual taking of the vehicle.

. Unauthorized use of a movable, La. R.S. 14:68, is a distinct offense from unauthorized use of a motor vehicle, La. R.S. 14:68.4, but the latter was only added as an offense in 1995, after the decision in O.B. The operative language in each- of the statutes is so similar that an interpretation as to the meaning of one may be instructive as to the interpretation of the other.

.The vehicle fit the description- of one from which gunshots had been fired, causing the police to engage in pursuit of the vehicle. H.N., 717 So.2d at 667.

. We again recognize that the petition makes reference to a possible firearm and controlled dangerous substance, but no evidence of either was introduced at the adjudication hearing.