**STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT**

**23-625**


**STATE IN THE INTEREST OF X.J.M.**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 35872
HONORABLE LILYNN ANNETTE CUTRER, DISTRICT JUDGE


\*\*\*\*\*\*\*\*\*\*


**WILBUR L. STILES
JUDGE**


\*\*\*\*\*\*\*\*\*\*


Court composed of Elizabeth A. Pickett, Charles G. Fitzgerald, and Wilbur L. Stiles, Judges.


**ADJUDICATIONS AFFIRMED IN PART;
RENDERED MOOT IN PART;
DISPOSITIONS VACATED;
REMANDED WITH INSTRUCTIONS.**

**Annette Fuller Roach**
**Louisiana Appellate Project**
**P. O. Box 6547**
**Lake Charles, LA 70606-6547**
**(337) 436-2900**
**COUNSEL FOR APPELLANT:**
     **X. J. M.**

**Stephen C. Dwight**
**District Attorney**
**Fourteenth Judicial District**
**Karen C. McLellan**
**Trisha C. Colonna**
**Assistant District Attorneys**
**901 Lakeshore Drive, Suite 800**
**Lake Charles, LA 70601**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**STILES, Judge.**

The trial court adjudicated X.J.M. [1] a delinquent for the offenses of illegal possession of a handgun for a juvenile, second offense; illegal possession of a stolen firearm, second offense; obstruction of justice; and unlawful possession of tobacco by a minor. The trial court imposed dispositions immediately thereafter. X.J.M. appeals. Finding review of the adjudication for illegal possession of tobacco by a minor rendered moot, we affirm the remaining three adjudications. We vacate the dispositions and remand for a dispositional hearing and new dispositions.

## FACTUAL AND PROCEDURAL HISTORY

On May 17, 2023, an off-duty deputy working security at a Lake Charles Wal-Mart detained a suspect for shoplifting. Another suspect fled toward a nearby neighborhood. Calcasieu Parish Sheriff's Deputy Miguel Juarez heard the dispatch regarding the incident and drove into the neighborhood near Wal-Mart where he found two males walking together. As he approached, however, they fled and jumped two fences. The taller of the two, identified as X.J.M., stopped running. When Deputy Juarez detained and searched him, X.J.M. told the deputy that he had a vape pen in his pocket.

Senior Corporal Tanner Atwell arrived on the scene and spoke to area resident Gregory Stewart, who pointed him to the location of a backpack that X.J.M. had discarded. Corporal Atwell looked in the backpack and found a loaded handgun, an additional magazine, and a cell phone. Corporal Atwell explained that he "ran the

---

[1] We use the Juvenile's initials to protect the identity of the minor child. *See* La.R.S. 46:1844(W). *See also* Uniform Rules—Courts of Appeal, Rule 5–2.

firearm" and was advised that it had been stolen. The record otherwise establishes that the weapon had been reported as stolen from a vehicle several months earlier.

On May 23, 2023, the State filed a petition alleging X.J.M. was delinquent due to the commission of multiple offenses: illegal possession of a handgun by a juvenile, second offense, a violation of La.R.S. 14:95.8(B)(2); illegal possession of a stolen firearm, second offense, a violation of La.R.S. 14:69.1(B)(2); obstruction of justice, a violation of La.R.S. 14:130.1; and unlawful possession of tobacco, a violation of La.R.S. 14:91.8.

The court conducted the adjudication hearing on June 21, 2023. After hearing evidence and argument, it adjudicated X.J.M. a delinquent as to all charges. On the same date, the court ordered dispositions regarding each adjudication.

X.J.M. appeals, assigning the following as error:

1)      The evidence was insufficient to prove the necessary elements for an adjudication of guilty for the offense of possession of a handgun by a juvenile, second offense. The State failed to prove that the backpack belonged to X.J.M. or that X.J.M. had knowledge of the contents of the backpack or exercised control over the backpack and its contents.

2)      The evidence was insufficient to prove the necessary elements for an adjudication of guilty for the offense of possession of a stolen handgun, second offense. The State failed to prove that X.J.M. knew that a handgun was located in the backpack or that the handgun had been misappropriated.

3)      The evidence was insufficient to prove the necessary elements for an adjudication of guilty for the offense of obstruction of justice. The State failed to prove that at the time X.J.M. tossed the backpack, he was aware that either it contained a handgun or that the handgun had been misappropriated.

4)      The evidence was insufficient to prove the necessary elements for an adjudication of guilty for the offense of possession of tobacco by a minor. The State failed to prove that a vape was removed from the person of X.J.M. and that any alleged vape contained a tobacco product as defined and required by the statute.

5) The juvenile judge erred in failing to conduct a disposition hearing as the record does not contain a waiver of the hearing by either X.J.M. or his counsel.

**DISCUSSION**

*Errors Patent*

Pursuant to La.Code Crim.P. art. 920 and La.Ch.Code art. 104, this court reviews juvenile criminal proceedings for errors patent on the face of the record. *See State in the Interest of A.J.J.*, 23-117 (La.App. 3 Cir. 7/12/23), 368 So.3d 790. Following review, we identify several such errors but determine that only one requires correction on remand.

First, X.J.M.'s place of birth was not listed in the petition as required by La.Ch.Code art. 845(A)(1). Such an omission, however, is a defect as to form only, and X.J.M. has not alleged prejudice as a result. The error is thus harmless. *See* La.Ch.Code art. 845(B); *State in the Interest of C.N.*, 22-80 (La.App. 3 Cir. 6/1/22) (unpublished opinion) (2022 WL 1766018). Additionally, the trial court failed to advise X.J.M. of his rights at the appearance to answer the petition as required by La.Ch.Code art. 855. [2] As X.J.M. was represented by counsel and denied the allegations, however, this error is also harmless. *State in the Interest of D.B.,* 13-1364 (La.App. 3 Cir. 4/23/14), 137 So.3d 1282, *writ denied*, 14-1092 (La. 1/9/15), 157 So.3d 596.

Finally, the trial court failed to inform X.J.M. of the prescriptive period for filing post-conviction relief as required by La.Code Crim.P. art. 930.8 and as applied

---

[2] Louisiana Children's Code Article 855 requires the court to first determine if the child is capable of understanding statements about his or her rights and then to advise the child of the nature of the proceedings, the nature of the allegations of the petition, the right to an adjudication hearing, the right to appointed counsel, the privilege against self-incrimination, the range of authorized responses, and the possible consequences of his or her admission that the allegations are true, including the maximum and minimum dispositions which may be imposed.

by this court in juvenile matters. *See, e.g., State in the Interest of C.C.H.*, 21-19 (La.App. 3 Cir. 5/5/21), 319 So.3d 940. Therefore, in discussion of assignment of error five, we find it necessary to vacate the dispositions entered and to remand for a new dispositional hearing. At the hearing, the trial court is instructed to advise X.J.M. of the time limitation for filing an application for post-conviction relief.

*Sufficiency of the Evidence*

In his first four assignments of error, X.J.M. challenges the sufficiency of the evidence adduced against him at the adjudication hearing.

<u>Standard of Review</u>

In addressing sufficiency of the evidence within the juvenile adjudication context, the supreme court has explained:

> It is axiomatic that in a juvenile adjudication proceeding, as in any criminal trial, the State must prove beyond a reasonable doubt every element of the offense alleged in the petition. Ch. C. art. 883 ("In order for the court to adjudicate a child delinquent, the state must prove beyond a reasonable doubt that the child committed a delinquent act alleged in the petition."); *In Re Winship*, 397 U.S. 358, 365, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) ("The same considerations that demand extreme caution in factfinding to protect the innocent adult apply as well to the innocent child."); *State in the Interest of D.P.B.*, 02-1742, p. 4-5 (La. 5/20/03), 846 So. 2d 753, 756–57. The constitutional standard of review for juveniles is likewise identical to that of adults, *i.e.* the appellate court must determine whether, upon viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find that the State proved all of the essential elements of the crime beyond a reasonable doubt. Ch. C. art. 883; *State ex rel. R.T.*, 00-0205, p. 2 (La. 2/21/01), 781 So. 2d 1239, 1241 (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

> In cases subsequent to *Jackson*, the United States Supreme Court has explained that the "any rational trier of fact" standard is not particularly demanding. *See, e.g., Schlup v. Delo*, 513 U.S. 298, 330, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) ("The *Jackson* standard, which focuses on whether any rational juror could have convicted, looks to whether there is sufficient evidence which, if credited, could support the conviction."); *Coleman v. Johnson*, 566 U.S. 650, 656, 132 S.Ct. 2060, 182 L.Ed.2d 978 (2012) ("[T]he only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold

4

of bare rationality."); *Musacchio v. U.S.*, —— U.S. ——, 136 S.Ct. 709, 715, 193 L.Ed.2d 639 (2016) ("Sufficiency review essentially addresses whether the government's case was so lacking that it should not have even been submitted to the jury.") (internal quotations and citations omitted).

*State in the Interest of E.S.*, 18-1763, pp. 10-11 (La. 10/22/19), 285 So.3d 1046, 1054-55 (footnote omitted). This court has further explained that the trial court's findings of fact in a juvenile criminal matter are subject to the manifest error standard of review, and the appellate court should not therefore disturb reasonable evaluations of credibility and inferences of fact absent manifest error. *See State in the Interest of J.A.*, 15-641 (La.App. 3 Cir. 12/2/15), 179 So.3d 959, *writ denied*, 15-2317 (La. 3/4/16), 188 So.3d 1058.

Illegal Possession of a Handgun by a Juvenile, Second Offense

Louisiana Revised Statutes 14:95.8 addresses the first charge against X.J.M., illegal possession of a handgun by a juvenile, second offense, and provides in pertinent part:

A. It is unlawful for any person who has not attained the age of eighteen years knowingly to possess any handgun on his person. Any person possessing any handgun in violation of this Section commits the offense of illegal possession of a handgun by a juvenile.

B. (1) On a first conviction, the offender shall be fined not more than one hundred dollars and imprisoned for not less than ninety days and not more than six months.

(2) On a second conviction, the offender shall be fined not more than five hundred dollars and imprisoned with or without hard labor for not more than two years.

With regard to X.J.M.'s age, appellate counsel maintains that the State presented no evidence of X.J.M.'s age at the time he allegedly possessed the firearm at issue. While X.J.M. accurately states that the State did not question a witness as to X.J.M.'s age or date of birth, the record otherwise plainly establishes that X.J.M.

had not yet attained the age of eighteen when he possessed the handgun. Notably, State Exhibit 5, a Judgment of Commitment and Order Granting the State custody following an earlier offense lists X.J.M.'s birthday as July 7, 2005,[3] whereas the offense at issue occurred on May 17, 2023. Moreover, X.J.M.'s adjudication counsel acknowledged X.J.M.'s age at the June 2023 hearing, stating that X.J.M. was seventeen.[4]

On the element of possession of the handgun, Deputy Juarez explained that after responding to the shoplifting dispatch he located two males walking together. As he approached, the two fled and jumped two fences. Mr. Stewart, an area resident, testified at the hearing that he saw the two young men running with the police coming behind them. He explained that one of the young men, who he identified as X.J.M., threw the bag over a fence before both men jumped into the neighbor's yard. Corporal Atwell retrieved the bag, which contained, among other items, a handgun.

X.J.M. testified on his own behalf and denied that the booksack, the handgun, and the magazines were his. He further denied that he knew of the booksack's contents. However, in explaining the series of events, he acknowledged that he was the individual who threw the backpack. He stated that he spent the night before the offense at his aunt's house. The next morning, his aunt dropped him off at his girlfriend's house. He left, however, after they argued. X.J.M. testified that, as he walked through the neighborhood, he saw a male that he used to play basketball with, and they started walking together. X.J.M. did not know this person's name. X.J.M. testified that the other male had the backpack but that he passed it to X.J.M.

---

[3] The petition also lists X.J.M.'s birthdate as July 7, 2005. Finally, this matter has obviously proceeded in juvenile court throughout its history.

[4] In argument, counsel stated that: "The bottom line is he's a juvenile. He's 17 years old."

when he wanted to change his hoodie. X.J.M. explained that, when a law enforcement vehicle approached, the unnamed male declared that he had to run, and he did so. X.J.M. stated that he ran too and that, when the other male told him there was "something in the booksack," X.J.M. threw it aside. X.J.M. testified that he realized he had no reason to run; at about that time an officer exited a vehicle and commanded him to "Freeze." X.J.M. raised his hands and stopped.

X.J.M.'s aunt, Melinda Gradney, denied that X.J.M. had a backpack, a phone, or a gun with him at the time she dropped him off at his girlfriend's house. X.J.M.'s mother testified that he lived with her in Sulphur at the time of the offense.[5] She explained that he did not own a gun, a backpack, or a phone and denied that the phone recovered at the scene belonged to him.

The trial court heard the above testimony regarding the circumstances of X.J.M.'s flight and his identification as the individual who discarded the backpack in which the handgun was found. Assessing the credibility of these denials, the court was free to accept or reject any of the testimony before it. *See, e.g., State v. Craft*, 01-248 (La.App. 3 Cir. 10/3/01), 796 So.2d 907; *State v. Winters*, 94-848 (La.App. 5 Cir. 4/25/95), 655 So.2d 412.

As the State correctly observes, a defendant's act of carrying a backpack or bag with a pistol in it violates the prohibition against having said "handgun on his person." *State in the Interest of R.P.*, 14-468 (La.App. 4 Cir. 9/10/14), 150 So.3d 76. Moreover, Louisiana jurisprudence recognizes flight or concealment as indicative of a guilty mind. *See, e.g., State in the interest of D.M.*, 11-2588 (La. 6/29/12), 91 So.3d 296; *See also State v. Coleman*, 552 So.2d 513, 515 (La.App. 2 Cir. 1989) (a jury

___

[5] She acknowledged that X.J.M. was previously in State custody but that he was released before the current offense.

could have rationally concluded that a defendant knew of a bag's contents when he discarded a paper bag upon law enforcement's approach "and began to ease away"), *writ denied*, 559 So.2d 138 (La.1990); *State v. Hamilton*, 546 So.2d 554 (La.App. 1 Cir. 1989) (a rational factfinder could have concluded that a defendant had knowledge of a box's contraband when he discarded the box when law enforcement approached).

Finally, we find that the record supports the trial court's determination that the State proved that this was X.J.M.'s second offense as both X.J.M. and his mother acknowledged that previous adjudication. The State also introduced State Exhibit 5, listing the earlier adjudication of "Illegal Possession of a Handgun by a Juvenile."

Illegal Possession of a Stolen Firearm, Second Offense

Regarding the next charge, illegal possession of a stolen firearm, second offense, Louisiana Revised Statutes 14:69.1 provides, in pertinent part:

> A. (1) Illegal possession of stolen firearms is the intentional possessing, procuring, receiving, or concealing of a firearm which has been the subject of any form of misappropriation.
>
> (2) It shall be an affirmative defense to a prosecution for a violation of this Section that the offender had no knowledge that the firearm was the subject of any form of misappropriation.
>
> B. Whoever commits the crime of illegal possession of firearms shall be punished as follows:
>
> (1) For a first offense, the penalty shall be imprisonment, with or without hard labor, for not less than one year nor more than five years.
>
> (2) For second or subsequent offenses, the penalty shall be imprisonment, with or without hard labor, for not less than two years nor more than ten years.

The foregoing discussion of X.J.M.'s age, possession of the handgun, and his status as a second offender apply with equal strength here. X.J.M. acknowledges that

the State presented evidence that the handgun at issue was stolen[6] but disputes that he was aware that the handgun was in the backpack and that it was stolen. As relevant to the above offense, however, the trial court was permitted to conclude the evidence of X.J.M.'s flight and concealment as indicative of a guilty mind. *State in the Interest of D.M.*, 91 So.3d 296; *Coleman*, 552 So.2d 513. Furthermore, as lack of knowledge is an affirmative defense to possession of a stolen firearm, X.J.M. was required to plead and establish that he did not know the firearm in his possession was stolen. *State v. Davis*, 20-155 (La. 5/5/21), 319 So.3d 889. While X.J.M. denied such knowledge, the trial court acted within its prerogative as fact finder in rejecting that testimony.

Obstruction of Justice

Louisiana Revised Statutes 14:130.1 provides for the third adjudication at issue, obstruction of justice, and states in pertinent part:

> A. The crime of obstruction of justice is any of the following when committed with the knowledge that such act has, reasonably may, or will affect an actual or potential present, past, or future criminal proceeding as described in this Section:
>
> (1) Tampering with evidence with the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal investigation or proceeding. Tampering with evidence shall include the intentional alteration, movement, removal, or addition of any object or substance either:
>
> (a) At the location of any incident which the perpetrator knows or has good reason to believe will be the subject of any investigation by state, local, or United States law enforcement officers; or
>
> (b) At the location of storage, transfer, or place of review of any such evidence.

---

[6] The handgun's owner testified that he had reported his .40 caliber Smith & Wesson handgun as having been stolen from his vehicle in February 2023. The owner identified the subject handgun as his own.

Even in X.J.M.'s version of events, he discarded the backpack because he knew it had questionable contents and he did not want to be caught with it in his possession. The State thus demonstrated that he intentionally moved the backpack with the knowledge that the act might affect a criminal proceeding, as proscribed by La.R.S. 14:130.1. In *State v. Jones*, 07-1052 (La. 6/3/08), 983 So.2d 95, the Louisiana Supreme Court explained that simply dropping contraband to the ground can violate the obstruction statute. Given those circumstances, we find no merit in this assignment of error.

Unlawful Possession of Tobacco

The final adjudication at issue was based upon unlawful possession of tobacco, a violation of La.R.S. 14:91.8(F)(1), which states: "It is unlawful for any person under the age of twenty-one to possess any tobacco product, alternative nicotine product, or vapor product."

As to this count, the trial court imposed a disposition of thirty days for tobacco possession, concurrent to the other terms, with credit for time served. As the record indicates that X.J.M. has been in custody since May 2023, his term has now clearly been completed. This eventuality appears to have been contemplated at the dispositional hearing:

> THE COURT:
> Yeah, okay, got it. I just want to check one thing for myself. So, on illegal possession of a firearm, second offense, the Court is going to sentence him to two years with the Department of Corrections. Illegal possession of a stolen firearm, second offense, the Court's going to sentence him to two years with the Department of Corrections, and those will run consecutive. Obstruction of justice, the Court will sentence him to six months Department of Corrections to run concurrent with his other two sentences; and possession of tobacco, 30 days of -- and that can run consecutive with the others, too. I don't think - that's not placement, though. That's 30 days' probation to run concurrent - I'm sorry, not consecutive - concurrent; and the six months is concurrent, but the two years and two years are consecutive.

MR. TURNER [OJJ]:
> Your Honor?

THE COURT:
> Uh-huh (affirmative).

MR. TURNER:
> Instead of probation for that 30 days, would the Court consider giving him credit for time served - he's been in detention -

THE COURT:
> Yes, that's fine.

MR. TURNER:
> - and just close out that faction?

THE COURT:
> Yeah, that'd be fine. That's perfect.

As X.J.M. has now served the term, further consideration is rendered moot.

*Dispositional Hearing*

In his final assignment of error, X.J.M. complains that the trial court erred by failing to conduct a dispositional hearing, as required by La.Ch.Code art. 892. The State concedes the error, and review of the record confirms the error. We therefore vacate the dispositions imposed and remand this matter for a dispositional hearing and new dispositions.

**DECREE**

For the foregoing reasons, we find that review of X.J.M.'s adjudication for unlawful possession of tobacco by a minor is rendered moot. We affirm X.J.M.'s adjudications for illegal possession of a handgun by a juvenile, second offense; illegal possession of a stolen firearm, second offense; and obstruction of justice. We vacate the related dispositions and remand this matter for a dispositional hearing and the imposition of new dispositions. At the hearing, the juvenile court is instructed to

11

advise X.J.M. of the time limitation for filing an application for post-conviction relief as set forth in La.Code Crim.P. art. 930.8.

**ADJUDICATIONS AFFIRMED IN PART;**
**RENDERED MOOT IN PART;**
**DISPOSITIONS VACATED;**
**REMANDED WITH INSTRUCTIONS.**